UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEW BEAUTY INC.<br><br>       Plaintiff,<br>   v.<br>TULA LIFE INC.<br><br>       Defendant. | 1:22-cv-09534<br><br>**COMPLAINT** |

Plaintiff Dew Beauty, Inc. ("Plaintiff") brings this Complaint against defendant Tula Life, Inc. ("Defendant"), and alleges on knowledge as to its own actions, and otherwise upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is an action for infringement of Plaintiff's common law trademark and unfair competition and false designation of origin under Section 43(a) of the Lanham Act and for substantial and related claims under the common laws of the State of New York, all arising from the Defendant's unauthorized use of the mark CLAYDATE in connection with the manufacture, distribution, marketing, advertising, promotion, and sale of Defendant's goods. Plaintiff seeks injunctive and monetary relief.

**JURISDICTION**

2. This court has jurisdiction over this action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), U.S.C. §§ 1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

3.	Personal jurisdiction is proper because, among other reasons, Defendant has a principal place of business in this jurisdiction and has solicited and conducted business in this jurisdiction thereby purposefully availing itself of the privilege of acting in the State of New York.

## VENUE

4.	Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district because its principal place of business is located in this district.

## PARTIES

5.	Plaintiff is a corporation that is duly organized and existing under the laws of Canada and has its principal place of business in 15495 10th Concession, Schomberg, Canada L0G1T0.

6.	Defendant is a corporation duly organized and existing under the laws of Delaware.  Upon information and belief, Defendant has its principal place of business located at 228 Park Avenue South, PMB 23606, New York, New York 10003-1502.

## FACTS

**Plaintiff's CLAYDATE Mark**

Plaintiff is a skincare business focused on products that inspire wellness and self-care. Plaintiff offers a wide range of skincare products and preparation and sells them through its website and various beauty subscription boxes, including brands such as, IPSY, FabFitFun, and Boxycharm that have captured the attention and imagination of a loyal consumer base.

8. Plaintiff is the owner of common law trademark rights for the mark CLAYDATE, a mark it uses in association with a clay mud mask. Plaintiff announced the launch of CLAYDATE to an international audience on Instagram on July 17, 2020 and began selling the product on dew.co the following day. (Exhibit A-B)

9. Plaintiff is also the owner of a pending trademark application, U.S. Serial No. 97168799, filed with the United States Patent and Trademark Office in December 2021 for the mark CLAYDATE used in connection with "Beauty masks for faces; Skincare preparations, namely, clay masks" offered for sale in interstate commerce since as early as July 18, 2020 (hereinafter, the "CLAYDATE Mark").

10. Plaintiff has used the CLAYDATE Mark in commerce throughout the United States and Canada continuously since July 18, 2020 in connection with the sale, advertising and promotion of its clay mask. Since July 2020, Plaintiff has sold and distributed over 117,000 CLAYDATE products to consumers in the United States.

11. As a result of its widespread, continuous, use of its CLAYDATE Mark in the United States to identify its goods and Plaintiff as their source, Plaintiff owns valid national common law rights to its trademark.

12. Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the skincare product sold under the CLAYDATE Mark. During the period from 2020 to the present, Plaintiff has expended $240,499.47 U.S. Dollars on the advertising and promotion of the goods sold under the CLAYDATE Mark.

13. Plaintiff manufactures, distributes, offers, promotes, and sells its skincare product under the CLAYDATE Mark through the following trade channels: direct to consumers on Plaintiff's website Dew.co, and via Instagram Shop, Tik Tok, Boxycharm.com DTC eCommerce platform, Boxycharm Monthly Beauty Subscriptions, Ipsy.com DTC eCommerce platform, IPSY Monthly Beauty Subscriptions, and FabFitFun.com DTC eCommerce Platform.

14. Plaintiff targets consumers seeking skincare products focused on wellness and self-care. Plaintiff's product marketing campaigns have reached millions of U.S. consumers within a relatively short time due to its costly investment in cultivating strategic relationships with prolific marketing partners and US-based influencers.

**Defendant's Unlawful Activities**

15. Defendant is also engaged in the advertising, promotion, and sale of skincare products. Defendant sells its products in trade channels that are identical to Plaintiff.

16. Without Plaintiff's authorization and approximately six months after Plaintiff acquired protectable exclusive rights in its CLAYDATE Mark, Defendant adopted and began using a mark identical to Plaintiff's Mark (hereinafter, the "Infringing Mark") in U.S. commerce. Upon information and belief, Defendant launched its skincare product in association with the infringing mark CLAYDATE on or about February 2021.

17. The Infringing Mark adopted and used by Defendant is identical to Plaintiff's CLAYDATE Mark and utilized to attract the same consumer base. Upon information and belief, Defendant was aware of Plaintiff's CLAYDATE clay mask prior to launching its own product.

18. Defendant has been engaged in the advertising, promotion, and sale of goods using the Infringing Mark throughout the United States on its clay mask product.

19. Defendant has advertised, promoted, offered for sale, and sold its clay mask under the Infringing Mark through trade channels that are similar or overlapping with Plaintiff's trade channels. Despite being aware of Plaintiff's prior use of the mark CLAYDATE on its clay mask, Defendant authorized the distribution of a clay mask under the name CLAYDATE for distribution to IPSY beauty box subscribers in November 2022. This was a particularly flagrant, willful act of infringement and unfair competition because Defendant knew that Plaintiff's CLAYDATE mask had been offered to IPSY's beauty box subscribers in May 2022 and Defendant was on notice of Plaintiff's rights to the mark CLAYDATE.

20. IPSY is one of Plaintiff's largest wholesale customers and Defendant's actions to date have been inexplicably reckless and demonstrate a disregard for Plaintiff's trademark rights; rights Plaintiff acquired by developing considerable goodwill among consumers and wholesale partners in the same trade channels that Defendant intended to exploit and now exploits.

21. On September 20, 2021, Defendant filed a U.S. trademark application, Serial No. 97035623 for the mark CLAYDATE and represented to the USPTO that it began using the mark in U.S. commerce in February 00, 2020 in connection with skincare face masks. (Exhibit C) Upon information and belief, there is no evidence of Defendant's use of the mark in interstate commerce prior to February 7, 2021. Moreover, Exhibits (Exhibit D-F) demonstrate that Defendant advertised the launch of its new Claydate mask in Feb. 2021; a year after the date it provided to the USPTO and 7 months after the national launch of Plaintiff's Claydate mask.

22. The threat of consumer confusion was evident from the beginning. An early example was a consumer comment posted on the Tik Tok account of Plaintiff's founder. The customer's comment expressed surprise at seeing Defendant's product offered under the CLAYDATE name and stated that she thought perhaps it was a collaboration between the two skincare providers.

23. On May 10, 2022, Plaintiff Dew initiated an opposition proceeding before the Trademark Trial and Appeal Board against Defendant, Tula Life. As of the filing of this Complaint, settlement negotiations between the parties have been unsuccessful, furthermore, Defendant Tula's first TTAB discovery responses were largely unresponsive. Defendant changed its position several times during settlement discussions but, ultimately, ignored Plaintiff's demands to prevent further harm by ceasing use of CLAYDATE immediately. Now, Plaintiff Dew is compelled to seek relief in this honorable Court and suspension of the opposition before the TTAB because Defendant has bulldozed forward to promote and distribute its Claydate mask to the same consumers and in the same channels as Plaintiff. By way of example, Defendant authorized the distribution and promotion of its Claydate mask in IPSY's November beauty subscription box, knowing this was the same subscription box that had earlier this year promoted Plaintiff's CLAYDATE mask to over 100,000 subscribers.

24. Defendant's infringing acts as alleged have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Defendant's skincare product and have and are likely to continue to deceive the relevant consuming public into believing, mistakenly, that Defendant's goods originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

25. Upon information and belief, Defendant's acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's CLAYDATE Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's goods to the Defendant.

26. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## COUNT ONE
### (Trademark Infringement and Federal Unfair Competition)

27. Plaintiff repeats and realleges paragraphs 1 through 26, as if fully set forth herein.

28. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

29. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

30. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

7

31. Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

32. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

33. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees if the Court finds this an exceptional case under the Lanham Act, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO
### (Common Law Trademark Infringement and Unfair Competition)

34. Plaintiff repeats and realleges paragraphs 1 through 33, as if fully set forth herein.

35. Plaintiff has a protectable trademark based on its continuous and extensive use of the mark in the United States.

36. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

37. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

38. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

39. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

Plaintiff requests judgment against Defendant as follows:

1. That Defendant has violated Section 43(c) of the Lanham Act.

2. That Defendant has violated New York common law trademark infringement and unfair competition law.

3. Permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    a. manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise or

promote Defendant's goods bearing the mark CLAYDATE or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's mark;

b.  engaging in any activity that infringes Plaintiff's rights in its CLAYDATE Mark;

c.  engaging in any activity constituting unfair competition with Plaintiff;

d.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

e.  registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark CLAYDATE or any other mark that infringes or is likely to be confused with Plaintiff's CLAYDATE Mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

4.  Directing Defendant to cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the CLAYDATE Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's CLAYDATE Mark, and to direct all distributors, retailers, wholesalers, and other individuals and

establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods bearing the CLAYDATE Mark.

5. Directing Defendant to formally abandon with prejudice any and all of its applications to register the mark CLAYDATE or any mark consisting of, incorporating, or containing Plaintiff's CLAYDATE Mark or any confusingly similar variation, or colorable imitation on any state or federal trademark registry.

6. Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

7. Directing that Defendant account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused.

8. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

9. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

10. Award Plaintiff such other and further relief as the Court deems just and proper.

Date: November 8, 2022                                    Respectfully Submitted,

*/s/ Bridget A. Zerner*
Bridget A. Zerner (BZ2582)
MARKHAM READ ZERNER LLC
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax:(617)742-8604
bzerner@markhamreadzerner.com


*s/ Kathryn G. Kent*
Kathryn G. Kent
*Admission Pending*
Gerben Perrott, PLLC
1050 Connecticut Ave NW, Suite 500
Washington, DC 20036
(202) 294-2287
kkent@gerbenlawfirm.com
Attorney for Plaintiff